**Ever L. BURNSIDE on Behalf of Kendrick BURNSIDE, Plaintiff–Appellant,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 88–4105**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

May 24, 1988.

Laurel G. Weir, Thomas L. Booker, Philadelphia, Miss., for plaintiff-appellant.

Pshon Barrett, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for defendant-appellee.

Before GEE, RUBIN, and SMITH, Circuit Judges.

JERRY EDWIN SMITH, Circuit Judge:

Plaintiff, on behalf of her minor son, appeals the denial of her application for child's Supplemental Security Income benefits. Our review of the record compiled in this case persuades us—as it did the district court—that plaintiff's claims were tested during the administrative process by the proper legal standards. Additionally, we find that the administrative law judge's decision to deny benefits is supported by the record. Therefore, we AFFIRM.

## I.

Plaintiff Ever Lee Burnside is the mother of claimant Kendrick Ladell Burnside. In 1978, at the age of three months, Kendrick was admitted to Rush Hospital in Meridian, Mississippi, and diagnosed as suffering from severe anemia and growth retardation. He was referred to medical staff at the University Medical Center in Jackson, where further tests revealed the presence of pancreatic cystic fibrosis. Based on this diagnosis, plaintiff applied for and received supplemental security income from May 1978 until January 1980. In October 1980, an administrative law judge ("ALJ") denied plaintiff's claim for continuance of these benefits, specifically finding upon review of the medical evidence that Kendrick's condition had improved and was within normal limits.[1]

In August 1985, plaintiff filed a second application for supplemental security income on behalf of her son. In the application, she listed "cystic fibrosis" as Kendrick's disability, and gave May 1978 as the date the impairment began. At a hearing before an ALJ, plaintiff testified that her son's condition had been diagnosed shortly after his birth and that he has been regularly taking medication since March 1978. She further stated that Kendrick experienced difficulty breathing during each of his recurrent colds, but that he nonetheless has been able to attend school and function well among other children.

Medical evidence confirmed that the child suffers from cystic fibrosis but that the condition has been well controlled with medication. The report of Dr. J. A. Lauderdale, an examining physician, revealed that Kendrick is susceptible to occasional upper-respiratory infections but that the chest x-ray proved to be within normal limits; the disease had made little or no progress.

After hearing the testimony and examining the medical records, the ALJ denied plaintiff's application for benefits. According to the ALJ, the evidence presented showed that Kendrick is "not disabled" within the meaning of the Social Security Act. After receiving this ruling, plaintiff pursued her administrative remedies with the appeals council, which rendered a decision unfavorable to her.

Having thus exhausted her administrative remedies, plaintiff filed this civil action. After reviewing the record, the magistrate filed a "Report and Recommendation" suggesting that the decision to deny plaintiff benefits was supported by substantial evidence. Despite plaintiff's objec-

---

1. Plaintiff did not pursue her administrative remedies after this first adverse decision; nor does she now ask that we examine the Secretary's 1980 decision. She merely proffers evidence of Kendrick's condition at that time as relevant to the Secretary's present determination below.

tions, the district court adopted the magistrate's report. This appeal followed.

## II.

■ The scope of our review of the Secretary's decision to deny supplemental security income is restricted to two inquiries: (1) Does the record contain substantial evidence that supports the Secretary's position; and (2) did the Secretary apply the proper legal standards in evaluating the evidence? *Hollis v. Bowen,* 832 F.2d 865, 866 (5th Cir.1987); *Underwood v. Bowen,* 828 F.2d 1081, 1082 (5th Cir.1987). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adams v. Bowen,* 833 F.2d 509, 511 (5th Cir.1987) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In applying the substantial evidence standard, we must carefully scrutinize the record to determine whether, in fact, such evidence is present. At the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's. *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987).

On appeal, plaintiff challenges two distinct aspects of the Secretary's decision. First, she attacks the legal standard by which the ALJ evaluated the severity of her son's condition. Second, she challenges —as not supported by substantial evidence—the ALJ's determination that her son is not disabled. We address each of plaintiff's arguments in turn.

### A. *The ALJ's Evaluation of Kendrick's Condition*

Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.,* provides for supplemental security income for the disabled. The Act broadly defines "disability" in part as follows:

> An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).

*Id.* § 1382c(a)(3)(A). The Act also authorizes the Secretary to promulgate regulations setting forth more refined criteria for determining disability. *Id.* § 1382c(a)(3)(D). Accordingly, the regulations provide that a child will be found to be disabled if he:

> Has a medically determinable physical or mental impairment(s) which compares in severity to any impairment(s) which would make an adult (a person age 18 or over) disabled. This requirement will be met when the impairment(s)—
>
> (1) Meets the duration requirement; and
>
> (2) Is listed in Appendix 1 of Subpart P of Part 404 of this chapter; or
>
> (3) Is determined by ... [the Secretary] to be medically equal to an impairment listed in Appendix 1 of Subpart P of Part 404 of this chapter.

20 C.F.R. § 416.923 (1985).

■ The appendix referred to in the regulation lists impairments for both adults and children. Part A of the appendix lists impairments found in adults; however, this list may also be applied to children if the disease processes have a similar effect on adults and younger persons. 20 C.F.R. § 416.925(b)(1) (1985). Part B of the appendix contains an additional list of impairments applicable only to children. *Id.* § 416.925(b)(2) (1985). In evaluating disability for a person under age eighteen, Part B must be consulted first; and if the criteria in Part B are found not to apply, then and only then must Part A be used. *Id. See also Hinkley v. Secretary of Health & Human Services,* 742 F.2d 19, 23 (1st Cir.1984).

■ In the instant case, the ALJ evaluated Kendrick's condition by comparison to the list of impairments found in the appendix, 20 C.F.R. Pt. 404, Subpt. P, App. 1

Parts A and B (1985). Plaintiff contends, however, that the ALJ should have used additional criteria, namely, the non-severity analysis required by *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985), for evaluating certain disability claims.

In *Stone,* we noted that disability determinations pursuant to 20 C.F.R. §§ 404.-1520 and 416.920 require a five-step procedure,[2] one step of which requires the ALJ to determine whether a claimant's impairment is "severe." 752 F.2d at 1100. We then reiterated the following standard for determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Id.* at 1101 (quoting *Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir.1984), and *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)).

Plaintiff argues that the ALJ should have evaluated her son's condition in light of this standard, stressing that his cystic fibrosis is not merely a "slight abnormality," but one demanding costly medications to keep under control. Plaintiff's argument, however, proceeds from two mistaken assumptions about *Stone*'s non-severity test. First, *Stone*'s five-step evaluation procedure applies only to *adult* claimants, who must comply with regulations set out in 20 C.F.R. § 416.920, not to child claimants, whose disabilities are evaluated according to the procedure set out in 20 C.F.R. § 416.923. Under § 416.923, a child claimant need not establish the "severity" of his or her impairment in any way other than showing its comparative equivalence to an impairment listed in the appendix.

In this respect, plaintiff is also mistaken in assuming that *Stone*'s non-severity analysis constitutes an alternative criterion for determining disability, rather than a single step in a sequential evaluation, as we have indicated. Once an adult claimant establishes the severity of his or her impairment, *Stone* still requires a finding of comparative equivalence with one or more of the listed impairments in order for the individual to be considered disabled. 752 F.2d at 1100–01. Thus, the standard under which the ALJ evaluated Kendrick's condition is actually less stringent than the adult standard referred to in *Stone.*

### B. *The ALJ's Factual Determination of No Disability*

▮ In Part B of the appendix, the Secretary has established medical criteria for evaluating whether childhood cystic fibrosis reaches the level of severity necessary to constitute a compensable disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 Part B § 103.13 (1985). Our review of the record indicates that the ALJ had before him substantial evidence on which to base his conclusion that Kendrick's cystic fibrosis has not measured up to this or any other listed impairment in the appendix.

In order to meet the listing under Table 1 of § 103.13(A), a child of Kendrick's height (48 inches) must have a forced expiratory volume ($FEV_1$) equal to or less than .06 liters. Kendrick's $FEV_1$ was 1.06 before medication, and thus exceeds the requirement by a full 1.00 liter and is more than

---

**2.** The five-step procedure set out in *Stone* for sequentially evaluating a claim and determining whether a claimant is disabled consists of the following:

The first step involves the determination whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (1984). The second step, which is here challenged, requires the factfinder to decide whether a claimant's impairment is severe, irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(c) (1984). If the claimant is found to have a severe impairment, it is compared against a list of impairments found in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d) (1984). If the claimant's impairment is listed, the individual is considered disabled. *Id.* If it is not listed, the next step must be considered. At that point, the factfinder must decide whether the claimant can do past relevant work. 20 C.F.R. § 404.1520(e) (1984). The final question is whether the claimant can perform any other work. Only at this stage are a claimant's residual functional capacity, age, education, and past work experience considered. 20 C.F.R. [§ 404.1520(f)] (1984).

*Stone,* 752 F.2d at 1100–01 (footnote omitted).

seventeen times as much as the threshold level of .06 liters.

Kendrick also fails to meet or equal an alternative criteria found at § 103.13(B).[3] This subsection sets out a three-pronged test for establishing disability based on pulmonary manifestations of cystic fibrosis, and consists of the following:

1. History of dyspnea on mild exertion or chronic frequent productive cough, and

2. Persistent or recurrent abnormal breath sounds, bilateral rales or rhonchi; and

3. Radiographic findings of extensive disease with hyperaeration and bilateral peribronchial infiltration.

In our review of the record, we find nothing in Kendrick's medical history that would indicate a history of dyspnea on mild exertion or chronic frequent productive cough. Dr. Lauderdale's examination revealed clear lungs and no audible rales or abnormal breath sounds, and he concluded generally that the disease had made little or no progress with the proper medication.

Plaintiff argues, however, that she cannot afford to continue purchasing the medication that for the past several years has held her son's disease in check. She contends that under our recent decision in *Lovelace v. Bowen*, 813 F.2d 55 (5th Cir.1987), her poverty entitles her to Supplemental Security Income for preventative medication and/or treatment for him. Although we acknowledge that a *disabled* indigent under *Lovelace* may, because of personal circumstances, be entitled to benefits for facilitating the purchase of *remedial* medication, this rule does not encompass claims of persons who can prove no disability but only seek benefits as a means of affording care that might conceivably *prevent* a disability. Such a holding would open the door to virtually unlimited claims for preventative benefits.

Lastly, plaintiff contends that the ALJ erred in commenting on the physical appearance of her son at the hearing and considering such evidence in his determination of nondisability. We dismiss this point as insignificant, having found the transcript to contain nothing indicating that the ALJ based his finding on, or gave any substantial weight to, his observation of Kendrick. The clear weight of medical evidence presented to the ALJ provided a sound basis, exceeding the requirements of the substantial evidence rule, for the ALJ's decision. Hence, any physical observation was only incidental.

A case from this circuit that is cited by plaintiff, *Benson v. Harris*, 638 F.2d 1355 (5th Cir.1981), is not to the contrary. There, we merely held that it is error for an ALJ to give weight to personal observation while totally *ignoring* subjective testimony of pain presented by the claimant at the hearing. *Id.* at 1357. Similarly, in *Lovelace v. Bowen* we held only that the claimant's demeanor at the hearing is not indicative of how much pain he suffers while at work. 813 F.2d at 59–60.

### III.

As in other cases claiming disability benefits, "the claimant bears the heavy burden of establishing the existence of a disability within the meaning of the Act, and this Court will rarely overturn the decision of the Secretary." *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir.1979). Here, the Secretary's decision is amply supported by substantial evidence that there was no such disability. The judgment below is AFFIRMED.

---

3. 20 C.F.R. Pt. 404, Subpt. P, App. 1 Part B § 103.13(B) (1985). Since this test is to be applied only in situations where ventilatory function testing cannot be performed, our review of the evidence at this point becomes merely cumulative.